Martin F. Casey
Gregory G. Barnett
James P. Krauzlis
**CASEY & BARNETT, LLC**
305 Broadway, Ste 1202
New York, New York 10007
(212) 286-0225
mfc@caseybarnett.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FEDERAL INSURANCE COMPANY a/s/o
FLEXSTEEL INDUSTRIES, INC., and a/s/o          18 Civ.
STYLECRAFT HOME COLLECTION, INC.

       Plaintiff,                                    **COMPLAINT**

   - against –

M/V CMA CGM G. WASHINGTON, her engines,
tackle, boilers, etc. *in rem*; HOOTONG
INTERNATIONAL SHIP LEASE COMPANY
LIMITED; BOCOMM INTERNATIONAL SHIP
LEASE COMPANY and CMA CGM S.A., *in
personam*.

       Defendants.
------------------------------------------------------------------X

      Plaintiff, FEDERAL INSURANCE COMPANY a/s/o FLEXSTEEL INDUSTRIES, INC.; and a/s/o STYLECRAFT HOME COLLECTION, INC. by and through its attorneys, Casey & Barnett LLC, as and for its Complaint, alleges upon information and belief as follows:

### JURISDICTION

   1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333.

## PARTIES

2. At all material times, FEDERAL INSURANCE COMPANY (hereinafter "FIC" or "Plaintiff") was and is a corporation with an office and place of business located at 1133 Avenue of the Americas, New York, New York 10036, and is the subrogated underwriter of (i) a consignment consisting of Leather Furniture and (ii) a consignment consisting of Home Decor, each laden on board the M/V CMA CGM G. WASHINGTON, as more specifically described below.

3. At all material times, FLEXSTEEL INDUSTRIES, INC., (hereinafter "Flexsteel" or "Plaintiff") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 385 Bell Street, Dubuque, Iowa 52001 and was the owner/consignee of a consignment of Leather Furniture laden on board the M/V CMA CGM G. WASHINGTON, as more specifically described below.

4. At all material times, STYLECRAFT HOME COLLECTION, INC., (hereinafter "Stylecraft" or "Plaintiff") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located at 8474 Market Place Drive, Southaven, MS 38671 and was the owner/consignee of a consignment of Home Decor laden on board the M/V CMA CGM G. WASHINGTON, as more specifically described below.

5. At all material times, defendant M/V CMA CGM G. WASHINGTON (hereinafter "the vessel") is an ocean-going container ship owned and operated by defendants, as more specifically described below, that carried containerized cargo which is the subject matter of this lawsuit, from China to the United States.

6. At all material times, defendant HOOTONG INTERNATIONAL SHIP LEASE COMPANY LIMITED (hereinafter "Hootong" or "Defendant") was and is a corporation with an

2

office and place of business located at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960, was and is the registered owner and/or operator and/or manager of the M/V CMA CGM G. WASHINGTON and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

7. At all material times, defendant BOCOMM INTERNATIONAL SHIP LEASE COMPANY LIMITED (hereinafter "Bocomm" or "Defendant") was and is a corporation with an office and place of business located at Far East Consortium Bldg, First Fl., 121 Des Voeux Road Central, Hong Kong, was and is the registered owner and/or commercial operator and/or manager of the M/V CMA CGM G. WASHINGTON and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

8. At all material times, defendant, CMA CGM S.A. (hereinafter "CMA" or "Defendant") was and is a corporation organized and existing by virtue of the laws of a foreign state with an office and place of business located c/o CMA CGM (America) LLC, 5701 Lake Wright Drive, Norfolk, VA 23502, and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court as a common carrier of goods for hire and was the technical manager of the M/V CMA CGM G. Washington.

9. Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

## RELEVANT FACTS

### Claim 1 – Flexsteel Industries, Inc.

10. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 9, as if herein set forth at length.

11. In January 2018, a consignment consisting of 1,807 Bales of Leather Furniture laden into 20 containers, namely: JBHU315968, JBHU316780, JBHU315316, JBHU315577, JBHU316079, JBHU316009, JBHU315795, JBHU316010, JBHU316759, JBHU315809, JBHU316013, JBHU315973, JBHU315973, JBHU315982, JBHU316021, JBHU316074, JBHU316015, JBHU316067, JBHU316020, JBHU316076 and JBHU315981, was booked for transit with defendant CMA-CGM on board the CMA CGM G. WASHINGTON from Yantian, China to Los Angeles, California.

12. In or about January 2018 the 20 container-loads of Leather Furniture were delivered into the care, custody and control of CMA-CGM at the marine terminal in Yantian, China.

13. The transportation of the consignment was all arranged in consideration of an agreed upon freight, and pursuant to CMA CGM bills of lading numbers SHZ2308965, SHZ2308968, SHZ2308977, SHZ2308981, SHZ2308987 and SHZ2309009 each dated January 12, 2018.

14. Thereafter, on about January 12, 2018 the aforementioned containers were laden on board the M/V CMA CGM G. WASHINGTON.

15. On or about January 20, 2018, while the vessel was enroute to the United States and in the Pacific Ocean, and experiencing weather conditions of Beaufort Force 6, the containers in Bays 17, 53 and 57 collapsed, causing numerous containers to fall overboard and additional containers to suffer physical damage.

16. Flexsteel had 8 of its containers fall overboard, namely, JBHU315968, JBHU316780, JBHU315316, JBHU316079, JBHU315795, JBHU315973, JBHU316021, and JBHU316020; and had an additional 12 containers suffer physical damage, namely,

JBHU315577, JBHU316009, JBHU316010, JBHU315809, JBHU316759, JBHU316013, JBHU315982, JBHU316074, JBHU316015, JBHU316067, JBHU316076, and JBHU315981.

17.     The C&F value of the cargo laden into the 8 containers lost overboard totaled $303,359.39. The cargo in the 12 damaged containers was ultimately determined to be a constructive total loss due to the nature of damage suffered. The C&F value of the cargo laden into the 12 damaged containers totaled $396,452.78.

18.     As a result of the foregoing, Flexsteel suffered damages in the amount of $699,812.17.

19.     At all times relevant hereto, a contract of insurance for property damage was in effect between Flexsteel and FIC, which provided coverage for, among other things, loss or damage to the aforementioned consignment of Leather Furniture.

20.     Pursuant to the aforementioned contract of insurance between Flexsteel and FIC, monies have been expended on behalf of Flexsteel to the detriment of FIC due to the damages sustained during transit.

21.     As FIC has sustained damages as a result of said expenditures, expenditures rightly the responsibility of defendants, FIC has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the defendants.

22.     By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $699,812.17.

## Claim 2 – Stylecraft Home Collections, Inc.

23.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 9, as if herein set forth at length.

24.     In January 2018, a consignment consisting of 10,608 cartons of Home Décor laden into 14 containers, namely: JBHU315986, JBHU315393, JBHU315319, JBHU316025, JBHU315966, JBHU315797, JBHU315972, JBHU315992, JBHU315392, JBHU315321, JBHU316016, JBHU315967, JBHU315320 and JBHU315462, was booked for transit with defendant CMA-CGM on board the CMA CGM G. WASHINGTON from Yantian, China to Southaven, Mississippi via Los Angeles, California.

25.     In or about January 2018 the 14 container-loads of Home Décor were delivered into the care, custody and control of CMA-CGM at the marine terminal in Yantian, China.

26.     The transportation of the consignment was all arranged in consideration of an agreed upon freight, and pursuant to CMA CGM bill of lading number SHZ2308950 dated January 12, 2018.

27.     Thereafter, on or about January 12, 2018 the aforementioned containers were laden on board the M/V CMA CGM G. WASHINGTON.

28.     On or about January 20, 2018, while the vessel was enroute to the United States and in the Pacific Ocean, and experiencing weather conditions of Beaufort Force 6, the containers in Bays 17, 53 and 57 collapsed, causing numerous containers to fall overboard and other containers to suffer physical damage.

29.     Stylecraft had 7 of its containers of cargo fall overboard, namely: JBHU315393, JBHU315797, JBHU315392, JBHU316016, JBHU315967, JBHU315320, and JBHU315462,

6

and another 4 other containers suffer physical damage, namely JBHU315986, JBHU315319, JBHU316025 and JBHU315321.

30. The C&F value of the cargo laden into the seven containers lost overboard totaled $178,156.80. The cargo in the four damaged containers needed to be transloaded into new containers and Stylecraft incurred expenses totaling $955.00 for this operation.

31. As a result of the foregoing, Stylecraft suffered damages in the amount of $179,111.80.

32. At all times relevant hereto, a contract of insurance for property damage was in effect between Stylecraft and FIC, which provided coverage for, among other things, loss or damage to the aforementioned consignment of Home Décor.

33. Pursuant to the aforementioned contract of insurance between Stylecraft and FIC, monies have been expended on behalf of Stylecraft to the detriment of FIC due to the damages sustained during transit.

34. As FIC has sustained damages as a result of said expenditures, expenditures rightly the responsibility of defendants, FIC has an equitable right of subrogation and is subrogated to the rights of its insured with respect to any and all claims for damages against the defendants.

35. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $179,111.80.

## AS AND FOR A FIRST CAUSE OF ACTION

36. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 35, inclusive, as if herein set forth at length.

37. Pursuant to the contracts of carriage entered into by and between the parties, the defendants owed contractual and statutory duties to the aforementioned cargo owners to carry, bail, keep and care for, protect and deliver the Plaintiffs' cargoes in the same good order and condition as at the time said Defendants first accepted custody and control of the goods.

38. The Defendants breached their contractual and statutory duties by failing to properly carry, bail, keep and care for, protect and deliver the Plaintiffs' cargoes in the same good order and condition as at the time said Defendants first accepted custody and control of the goods.

39. As a direct and proximate result of said breach of contract by Defendants, the Plaintiffs have suffered damages presently estimated to be no less than $699,812.17 in respect to the Flexsteel claim; and no less than $179,111.80 in respect to the Stylecraft claim.

40. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $699,812.17 in respect to the Flexsteel claim; and no less than $179,111.80 in respect to the Stylecraft claim.

## AS AND FOR A SECOND CAUSE OF ACTION

41. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 40, inclusive, as if herein set forth at length.

42. At the time of the aforementioned incident, defendants together with the entities they hired to act on their behalf, were acting as bailees of the aforementioned cargoes and in their own capacity, or through their contractors, agents, servants, or sub-bailees, had a duty to safely and properly keep, care for and deliver the shipment in the same good order and condition as

when entrusted to them. Defendants also had a duty to ensure that the services provided for the shipment were performed with reasonable care and in a non-negligent and workmanlike manner.

43. Defendants breached their duties and obligations as bailees by failing to properly carry, bail keep and care for, protect and deliver the Plaintiffs' cargoes in the same good order and condition as at the time said defendants first accepted custody and control of the goods.

44. As a direct and proximate result of said breach of contract by Defendants, the Plaintiffs have suffered damages presently estimated to be no less than $699,812.17 in respect to the Flexsteel claim; and no less than $179,111.80 in respect to the Stylecraft claim.

45. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $699,812.17 in respect to the Flexsteel claim; and no less than $179,111.80 in respect to the Stylecraft claim.

## AS AND FOR A THIRD CAUSE OF ACTION

46. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 45, inclusive, as if herein set forth at length.

47. The Defendants owed a duty to the Plaintiffs' cargoes to carry, bail, keep and care for, protect and deliver the aforementioned cargoes in the same good order and condition as at the time said Defendants first accepted custody and control of the goods.

48. The Defendants breached and were negligent in exercising their duty to carry, bail, keep and care for, protect and deliver the Plaintiffs' cargoes in the same good order and condition as at the time said Defendants first accepted custody and control of the goods.

49. As a direct and proximate result of the negligent acts committed by Defendants, the Plaintiffs have suffered damages presently estimated to be no less than $699,812.17 in respect to the Flexsteel claim; and no less than $179,111.80 in respect to the Stylecraft claim.

50. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $699,812.17 in respect to the Flexsteel claim; and no less than $179,111.80 in respect to the Stylecraft claim.

## AS AND FOR A FOURTH CAUSE OF ACTION

51. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 50, inclusive, as if herein set forth at length.

52. As the owners, operators, charterers and /or managers of the M/V CMA CGM G. WASHINGTON, defendants were responsible for properly manning, maintaining and repairing the vessel and for otherwise exercising due diligence to ensure that the vessel was seaworthy and fit to carry cargoes that were delivered to and loaded on board the M/V CMA CGM G. WASHINGTON during winter North Pacific voyages.

53. The losses sustained by plaintiffs were caused, in whole or in part, by the negligence and fault of defendants, and /or their agents, representatives and independent contractors for whose acts and omissions it was responsible, including but not limited to, their failure to maintain the M/V CMA CGM G. WASHINGTON in a seaworthy condition.

54. As a direct and proximate result of said breach of contract by Defendants, the Plaintiffs have suffered damages presently estimated to be no less than $699,812.17 in respect to the Flexsteel claim; and no less than $179,111.80 in respect to the Stylecraft claim.

55. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $699,812.17 in respect to the Flexsteel claim; and no less than $179,111.80 in respect to the Stylecraft claim.

**WHEREFORE,** Plaintiff prays:

1. That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2. That judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages in the amount of at least $699,812.17 in respect to the Flexsteel claim and at least $179,111.80 in respect to the Stylecraft claim, together with interest, costs and the disbursements of this action; and

3. That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
July 23, 2018
115-1517

                                                   **CASEY & BARNETT, LLC**
                                                   Attorneys for Plaintiff

By: _____
                                                    Martin F. Casey
                                                    Gregory G. Barnett
                                                    James P. Krauzlis
                                     305 Broadway, Ste 1202
                                     New York, New York 10007
                                     (212) 286-0225